## Patterson *versus* Moore's Executors.

An agent authorized to settle a claim against a carrier for the loss of certain goods, cannot give a discharge without receiving any consideration.   His mere agreement to receive other goods in place of those lost, will not operate as a release of the carrier's liability.

A carrier will not, in an action to recover the value of goods intrusted to him, be allowed to dispute the title of the shipper, by showing the subsequent state of the accounts between the acknowledged owner and the person from whom they were purchased; he having improperly delivered them to the vendor, and then acknowledged himself to be a debtor to their amount.

ERROR to the Common Pleas of *Blair county.*

This was an action of *assumpsit* by Robert Moore against Henry L. Patterson, to recover the value of 430 blooms, received by the defendant, as a common carrier, and not delivered to the plaintiff's consignee.   The plaintiff died pending the suit, and Joseph Moore and George H. Steiner, his executors, were substituted. The defendants pleaded *non assumpsit*, and payment with leave, &c.   The case was previously before this court, and is reported in 4 *Casey* 505.

The plaintiffs proved that, in 1841, Stewart & Horrell, their testator's warehouse-men in Hollidaysburg, shipped by the defendant's canal-boats a quantity of blooms, 430 of which were not delivered to the consignee in Pittsburgh.

The blooms were made by Hileman & Hammond, by whom they were sold to Moore, and delivered to Stewart & Horrell on his

[Patterson *v.* Moore's Executors.]

account. The defence was, that these 430 blooms were shipped for Moore by mistake; on the day they arrived at Hollidaysburg, one of the firm of Hileman & Hammond informed the defendant that Stewart & Horrell had made a mistake in forwarding them for Robert Moore, that they should have been shipped on their account, and induced him to alter the manifest accordingly.

In March 1842, Joseph P. Moore, a minor son of the plaintiffs' testator, came to Hollidaysburg in search of the missing blooms. The mistake was explained to him; and that the blooms intended for his father lay farther down the wharf than the spot from which those in question were taken; and Hileman & Hammond made an agreement with him that his father should take certain blooms, then at Water street, in lieu of those sent to Pittsburgh.

The defendant offered to prove on the trial, that on the 2d April 1842, Hileman & Hammond made a settlement of their accounts with Robert Moore, whereby, after deducting and excluding the 430 pieces of blooms in question, the debt due from Hileman & Hammond to Robert Moore was cancelled and paid; and further, that all the blooms delivered at Water street were on account of, and for the discharge of said debt. The plaintiffs objected to this offer, and the court sustained the objection, and sealed a bill of exceptions.

The plaintiffs' counsel presented the following points, upon which they requested the court to charge the jury :—

1. That the liability of Henry L. Patterson for the 430 pieces of blooms having been fixed by the delivery to him as a common carrier, his liability could only be discharged by a release upon a good consideration.

2. That the acts of general agency of Joseph P. Moore, a minor son of Robert Moore, are not sufficient to establish a special authority to release Patterson's liability; much less, to commute it for some other property or liability.

3. That even if the evidence establish the special authority of Joseph P. Moore to make the arrangement, as testified by Nelson; yet "if the conversation of Joseph P. Moore with Nelson and Hammond, which was only executory, had amounted to a release of Patterson, it would have failed for want of consideration, if no blooms were at the place appointed to meet the arrangement," or set apart for, or ordered to be delivered to Robert Moore. And there being no evidence that blooms were set apart for or delivered to Robert Moore in lieu of the 430 pieces, the plaintiffs are entitled to recover.

The court below (KIMMELL, P. J.) delivered the following charge to the jury :—" In the months of September, October and November 1841, this defendant, as a common carrier on the Pennsylvania Canal, received on board his boat, 1586 blooms for Robert

[Patterson v. Moore's Executors.]

Moore, which he agreed to deliver to Moore's consignee at Pittsburgh; of these all were delivered according to contract, except the 430 pieces shipped 29th October 1841. The metal was loaded in Water street, at the warehouse of Stewart & Horrell, by the direction of the manufacturers, Hileman & Hammond; and when the boat reached Patterson's Wharf, in the town of Hollidaysburg, the defendant's clerk, at the instance of Hammond, changed the manifest, so as to have the blooms forwarded to Pittsburgh for the firm of Hileman & Hammond. As the defendant contracted to deliver the metal at Pittsburgh for Robert Moore, and to his consignee, by permitting the manifest to be altered and the destination changed, he became fixed for their value. Robert Moore commenced this suit 18th October 1842, and died in November following; since that time, the case has been prosecuted by his executors, and they will be entitled to your verdict for the value of the blooms and interest thereon, unless, as is alleged, the plaintiffs' testator, or his agent for him, discharged defendant from the liability.

"It is said that Joseph P. Moore was the accredited agent for his father, to make settlement for him and generally to transact his business; and that in pursuance of this authority, on the 7th March 1842, and after the defendant was fixed for the value of the blooms, he came to Hollidaysburg on the hunt for these blooms, and at the office of defendant he learned why it was that they had never reached his father's consignee at Pittsburgh. It is said, that Hammond, of the firm of Hileman & Hammond, happened to be in town, and was called in, and he gave as the reason for changing the manifest, that the metal had been shipped by mistake, that the blooms that belonged to Robert Moore lay further down the wharf and were there still; and it is alleged that an arrangement was there and then made, by which the agent agreed to take the blooms at the wharf at Water street, in lieu of those missent, and it is also said, that Robert Moore afterwards did receive the metal under this arrangement. If it is established here by the evidence, that Joseph P. Moore was the agent for his father for the settlement of this claim, and that in pursuance of that authority he made the arrangement testified to by Nelson, and that the father afterward received the metal as agreed upon, then the liability of defendant was thereby discharged.

"These positions are denied by the counsel of the plaintiff, and they have requested the court to give you instructions on three points, submitted in writing. We affirm the first and second points; the law is correctly stated. We also answer the third point in the affirmative, except the latter clause, in which we are requested to say to you, that there is no evidence to show that the blooms were ever *set aside for or delivered to* Robert Moore. This is a question of fact which we submit to you, under the in-

[*Patterson v. Moore's Executors.*]

structions we have given; the case is narrowed down to this question, and if the jury believe that Robert Moore received the metal at Water street wharf, or any other metal in lieu of the 430 pieces, lost to him by the act of the defendant and his agent, then he has no right to complain, and it can make but little difference in this case, whether he received them under the arrangement said to have been made with the son, or in any other way. If it was received, the defendant was released from all claim. But if the metal was received by the father, it is most likely that it was in pursuance of the arrangement, and this would be a ratification of the act by the father. If the statement made by Nelson is disbelieved by the jury, for the reason assigned in the argument, then the jury may perhaps come to the conclusion that there was no delivery of the metal. We submit the question of fact to the jury on all the evidence in the case."

To this charge the defendant excepted; and a verdict and judgment having been rendered for the plaintiffs for $1871.93, the defendant sued out this writ, and here assigned for error : 1. The charge of the court. 2. The rejection of the evidence mentioned in his bill of exceptions.

*Blair & Banks*, for the plaintiff in error.—The acts of Joseph P. Moore, done by him as agent of his father, and permitted by him, should have been submitted to the jury : Dawson *v.* Roberts, 3 *Dow.* 219; Bank *v.* Norton, 1 *Hill* 502.

*Calvin* and *Orbison*, for the defendants in error, cited and relied upon the former decision of this case in 4 *Casey* 505.

The opinion of the court was delivered by

READ, J.—The defendant was a common carrier, and on the 29th October 1841, received 430 pieces of blooms for Robert Moore to be delivered at Pittsburgh. Instead of carrying them for Robert Moore, on their arrival at the wharf at Hollidaysburg on the 30th of the same month, the defendant permitted Hileman & Hammond to take possession of them, and they were sent to Pittsburgh for that firm according to the direction of Mr. Hammond. As these pieces of blooms were never, according to contract, delivered to Robert Moore, or his consignees, by the defendant, he of course became liable for their amount to their owner, and this liability commenced on the 30th October 1841.

To show a release or discharge of this liability, the defendant gave evidence that, on the 7th March 1842, Joseph P. Moore, a minor son of Robert Moore, of the age of sixteen or seventeen, came to defendant's warehouse at Hollidaysburg to see about their bloom account. That, in the course of a conversation between a clerk of the defendant, Hammond, and Joseph, the latter agreed to take

[Patterson *v.* Moore's Executors.]

the blooms at Water street in lieu of those 430 pieces alleged by Hileman & Hammond to have been missent.   The jury found that Robert Moore never received the metal at Water street wharf, or any other metal in lieu of the 430 pieces lost to him by the act of the defendant; and this narrows the question down to—whether the agreement to take by the son, was a release of the defendant.

Joseph was a clerk in his father's store on Water street, but the various acts alleged to have been done by him do not establish a general agency to transact all his father's business, and clearly not to make a settlement of such an amount, by simply agreeing to take something which is never delivered or received.   A letter of attorney, authorizing an agent "to collect a debt," does not empower him to give a discharge upon receipt of the debtor's note: *Story on Agency* 63 a.; still less would a clerk be authorized to release a liability like the present, without receiving any consideration whatever; which would invalidate the contract under any aspect of the case.

It was attempted to be proved by the defendant, that blooms had been received by Robert Moore, according to the alleged contract with his son, but the jury, as we have seen, negatived this positively and directly.   It was then offered to show by one of the firm of Hileman & Hammond that, on the 2d April 1842, the firm made a settlement with Robert Moore, whereby, after deducting and excluding the 430 pieces of blooms in question, the debt due from Hileman & Hammond to Robert Moore was cancelled and paid; and further, that all the blooms delivered at Water street were on account of and for the discharge of said debt.

It would be dangerous to allow a common carrier to dispute the title of the shipper of goods, by showing the subsequent state of the accounts between the acknowledged owner and the person from whom they were purchased, he having improperly delivered them to the vendor, who then acknowledged himself to be a debtor to their amount, and afterwards agreed to deliver that number in lieu of those taken by him.   We think, therefore, under the circumstances, the offer was properly rejected.

                                        Judgment affirmed.


THOMPSON, J., dissented.